

| | BEIJING    SAN FRANCISCO | THE NEW YORK TIMES BUILDING |
|---|---|---|
| COVINGTON & BURLING LLP | BRUSSELS   SEOUL<br>LONDON     SHANGHAI<br>NEW YORK   SILICON VALLEY<br>SAN DIEGO   WASHINGTON | 620 EIGHTH AVENUE<br>NEW YORK, NY 10018-1405<br>T 212.841.1000<br>F 212.841.1010<br>WWW.COV.COM |

July 3, 2013

VIA ELECTRONIC MAIL

The Honorable Analisa Torres
U.S. District Court, Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

    Re:    *Ear Booker Enterprises, Inc. v. Sony Music Entertainment*, 12-cv-2385

Dear Judge Torres:

    We represent defendant Sony Music Entertainment ("SME") in the above-captioned matter. Pursuant to Your Honor's Individual Rule of Practice III.A, we write to respectfully request a pre-motion conference and leave to move to dismiss in part plaintiff's amended complaint. SME sent the letter required by Individual Rule III.B.i to plaintiff on June 25. Plaintiff responded on July 2.

    As set forth in the parties' joint letter, this is a contract dispute concerning a heavily-negotiated, 70-page recording agreement with plaintiff (the "2002 Agreement").[1] Under the 2002 Agreement, SME owns the copyrights in the sound recordings delivered by plaintiff (the "Masters"), and has the unlimited right to use them in any manner. (2002 Agreement, ¶¶ 5.01, 5.02(a)). The agreement contains detailed provisions setting forth the circumstances under which SME will owe royalties to plaintiff from SME's uses of the Masters, and the specific method by which those royalties will be calculated. It also contains detailed provisions setting forth the manner in which plaintiff may audit and otherwise challenge SME's royalty accounting.

---

[1] Ear Booker and its principal, Al Yankovic, entered into recording contracts with SME's predecessors-in-interest in 1982, 1990, and 2002. Each of these agreements concerns separate sound recordings. The parties entered into a second agreement in 2002, however, which applied the 2002 Agreement's royalty and accounting provisions to the recordings delivered under the 1982 and 1990 contracts. The royalty and accounting terms of the 2002 Agreement thus govern this dispute.

**COVINGTON**
COVINGTON & BURLING LLP

The Honorable Analisa Torres
July 3, 2013
Page 2

Pursuant to those accounting provisions, plaintiff conducted an audit of eleven royalty statements covering each semi-annual royalty period from the period beginning July 1, 2003 through the period ended December 31, 2008. (Am. Compl. ¶ 12). After receiving a written report from plaintiff's auditors on March 9, 2010, SME provided a preliminary response to plaintiff's audit on May 17, 2010. (*Id.* ¶ 13). SME then provided its rebuttal report to the audit on December 9, 2010. (*Id.*) After plaintiff responded to SME's rebuttal report on September 20, 2011, SME provided a follow-up rebuttal on February 13, 2012. (*Id.*) Plaintiff filed this lawsuit on March 30, 2012. On June 21, 2013, plaintiff filed an Amended Complaint.

Plaintiff's Amended Complaint principally claims that SME breached its recording contracts with Plaintiff by (i) failing to properly calculate royalties on sales of music downloads, mastertones, and ringtones by digital retailers such as Apple's iTunes (Am. Compl. ¶¶ 48-63); (ii) failing to properly pay Ear Booker a share of income that SME received from a license to YouTube and from litigation settlements (*id.* ¶¶ 37-47); and (iii) failing to properly calculate royalties on income earned by SME's foreign affiliates (*id.* ¶¶ 64-69). Ear Booker also alleges a number of other miscellaneous breaches by SME.

SME does not seek to move for dismissal of plaintiff's digital download claim. Although SME is entitled to judgment as a matter of law, the contractual provisions at issue involve multiple complex cross-references. SME believes that the Court's consideration of those provisions will be enhanced by the substantial extrinsic evidence—including plaintiff's own audit report and a letter from plaintiff's own lawyer—showing that plaintiff repeatedly agreed with SME's reading of the contract until more than a year and a half after plaintiff submitted its audit report.

SME does seek, however, to dismiss plaintiff's other principal contract claims, as well as several of plaintiff's miscellaneous claims and all of plaintiff's claims for certain time periods:

***Plaintiff's Claims for Breach of Contract for the Post-Audit Period Are Barred By the 2002 Agreement's Conditions to Bringing Suit.***

The 2002 Agreement precludes Ear Booker from commencing a lawsuit concerning a royalty statement until Ear Booker has "issued a written audit report to [SME] setting forth in detail the basis for each objection" and the parties have made "a good faith effort to resolve all matters arising from that audit report." (2002 Agreement, ¶ 10.07). Although the Amended Complaint alleges that SME "has failed to properly account to and pay Ear Booker . . . [d]uring the period from July 1, 2003 *through the present*," it alleges that it provided SME with a written audit report covering only the royalty periods beginning July 1, 2003 through December 31, 2008. (Am. Compl. ¶¶ 11-13) (emphasis added).

In its July 2 letter, plaintiff stated that the Amended Complaint "does not raise any claims for the post-Audit period" and that Plaintiff is "willing to move to amend its Complaint to make it clearer that this period is not included in its claims." Amendment is unnecessary; we

2

**COVINGTON**
COVINGTON & BURLING LLP

The Honorable Analisa Torres
July 3, 2013
Page 3

respectfully submit that the Court should dismiss without prejudice any claims for royalty periods ended after December 31, 2008.

*A Number of Plaintiff's Alleged Contractual Breaches Fail to State a Cause of Action.*

*Plaintiff's Claims For a Share of All "Net Receipts" Received by SME.* Plaintiff alleges that SME must pay royalties on all moneys received by SME from (i) alleged litigation settlements and damages award, and (ii) license agreements with YouTube and MTV, on the grounds that such moneys are "capable of allocation" to Ear Booker and thus fall within the 2002 Agreement's definition of "Net Receipts." (*See* Am. Compl. ¶¶ 37, 38, 40).

But no provision of the 2002 Agreement requires SME to pay royalties in connection with all "Net Receipts." Instead, the agreement's royalty provisions unambiguously provide that SME is obligated to pay royalties only on certain kinds of Net Receipts that meet certain criteria.

None of those provisions sets forth a royalty to be paid in connection with damages awards and settlements from piracy lawsuits. And with respect to licensing income from YouTube and MTV, the royalty provision to which the Amended Complaint points obligates SME to pay royalties only in connection with "any royalty, fee, or other payment made to [SME] and *directly attributed to a Master*." (2002 Agreement, ¶ 9.03(h)(ii) (emphasis added)). But Plaintiff does not allege that SME has not paid the royalties due on moneys that SME received and that were directly attributed to one of plaintiff's Masters (i.e., on income received in connection with a specific play of a "Weird Al" video). Instead, plaintiff contends that SME must also share moneys that SME received from YouTube and MTV that were *not* directly attributed to an Ear Booker Master.

The New York Court of Appeals has expressly held that "[t]he unconditional transfer of ownership rights" in sound recordings to a record company permits the company to exploit those recordings "in any manner," with the record company obligated to pay only those royalties set forth in the recording agreement. *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 173 (N.Y. 2002). Thus, where a recording contract does not specify a royalty for a particular type of revenue, no royalty is owed on that revenue—"[h]owever sympathetic plaintiff's plight." *Id.* at 173. Because no royalty provision in the contract entitles Ear Booker to a share of all "Net Receipts" received by SME, plaintiff fails to state a claim for royalties on third party licensing of video content, (Am. Compl. ¶ 37), royalties on monetary awards and settlements from piracy disputes, (*id.* ¶ 38), and royalties on income received from YouTube (*id.* ¶¶ 39-47, 77).

*Plaintiff's Claim that SME Failed to Pay Royalties on "FGD" Online/Digital Transmissions.* Ear Booker claims SME breached the Agreements by "fail[ing] to pay any royalties for what it terms 'FGD' online/digital transmissions." (Am. Compl. ¶ 34). Ear Booker acknowledges, based on its audit, that "it appears that [SME] may not have received any royalties for these 'FGD' online/digital transmissions." (*Id.*) Ear Booker nevertheless alleges on information and belief that SME received "advances and/or other valuable consideration" from

3

COVINGTON
COVINGTON & BURLING LLP

The Honorable Analisa Torres
July 3, 2013
Page 4

download retailers, that "a portion of whatever valuable consideration was received by [SME] is attributable to the [plaintiff's] Masters," and that plaintiff "is entitled to a portion of that consideration." (*Id.*)

This allegation fails to identify any provision of the contract that SME allegedly breached. It therefore fails to state a claim. *See Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 496 (S.D.N.Y. 2002), ("Plaintiff's claim for breach of contract [fails] because the ... Complaint does not identify the specific provision of the ... Agreement breached by [Defendant]."), *aff'd*, 65 F. App'x 736 (2d Cir. 2003).

Having amended its complaint just over two weeks ago, plaintiff stated in its July 2 letter that it wishes to amend again "in order to more fully state the nature of these claims." Contrary to the Court's Individual Rule II.B.i, however, plaintiff did not describe "the amendments . . . to be made to the complaint." We respectfully submit that the Court should not grant plaintiff leave to amend yet again without plaintiff first describing the amendments to be made and identifying the contractual provision, if any, that it alleges SME to have breached.

*Plaintiff's Claim that SME Improperly Transferred Income from Foreign Affiliates.* Plaintiff's complaint asserts on information and belief that SME has understated licensing income by entering into agreements with its foreign affiliates that permit the affiliates to retain an unreasonable portion of the revenues from foreign distributions. (Am. Compl. ¶ 67).

But plaintiff pleads no facts in support of this conclusory, information-and-belief allegation. *See Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 327 (S.D.N.Y. 2011) ("Vague and conclusory allegations . . . are insufficient to make out a claim for breach of contract that can survive a motion to dismiss."). Judge Baer recently dismissed a substantially-identical claim against a book publisher, on the grounds that the "[p]laintiffs' allegations amount[ed] to little more than speculation" and therefore "failed to sufficiently plead a breach of contract." *See Keiler v. Harlequin Enters. Ltd.*, 2013 WL 1324093, at *3 (S.D.N.Y. Apr. 2, 2013). Plaintiff's claim likewise must be dismissed.

In its July 2 letter, plaintiff stated that it is "willing to move to amend its Complaint to allege additional facts relating to Sony's intercompany licenses with its foreign affiliates," but again failed to identify the proposed amendments. Unless plaintiff identifies now the specific facts that it contends support this claim, the Court should deny leave to amend as futile.

*Plaintiff's Claim that SME Failed to Pay Royalties for Certain Free Goods.* Plaintiff alleges that SME failed to pay Ear Booker for free goods offered outside of the "contractual limitation" set forth in Paragraph 9.04.1(b). (Am. Compl. ¶ 31). In its July 2 letter, plaintiff clarified that its claim is that SME "took impermissible free goods deductions by failing to keep its special discount programs to a limited duration, but instead engaged in a continuing series of programs [which] resulted in [SME] exceeding the permissible free goods deduction." In plain

## COVINGTON
COVINGTON & BURLING LLP

The Honorable Analisa Torres
July 3, 2013
Page 5

English, plaintiff contends that SME breached the contract by not paying plaintiff royalties on records distributed for free through discount programs that were not of "limited duration."

SME seeks dismissal of this claim, because the agreement specifically provides that SME is not obligated to pay plaintiff royalties on such records. Paragraph 9.04 of the 2002 Agreement provides that "no royalties will be payable on Phonograph Records furnished as free or bonus Phonograph Records [i.e., so-called 'free goods']." Paragraph 9.04.1(b), on which plaintiff relies, sets forth an exception to this general rule: solely for records distributed "through special sales programs, promotions, or marketing campaigns of limited duration instituted by [SME] or [its] distributor," SME is to pay the normal royalty rate on free goods exceeding nine percent of the Albums distributed under the agreement during any twelve-month period.

By the plain terms of the agreement, records distributed through special sales programs, etc. that are *not* of limited duration are outside the scope of the 9.04.1(b) exception—and thus are subject to the general rule that no royalties are owed on free goods. Plaintiff's claim that SME owes royalties on such free goods therefore must be dismissed.

***Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Must Be Dismissed As Duplicative.***

"Under New York law, a claim for breach of the implied covenant will be dismissed as duplicative if the conduct allegedly violating the implied covenant is also the predicate for breach of the underlying contract." *Cary Oil Co. v. MG Ref. & Mktg., Inc.*, 90 F. Supp. 2d 401, 419 (S.D.N.Y. 2000). Here, plaintiff claims that SME breached the implied covenant by purportedly failing to allocate to plaintiff money received from third party licensees such as YouTube—the same conduct that plaintiff claims breaches the express terms of the parties' contract. This cause of action is duplicative and must be dismissed.

\* \* \*

SME therefore requests that the Court conduct a pre-motion conference, dismiss without prejudice plaintiff's first cause of action for the periods ended June 30, 2009 through December 31, 2012, and grant SME leave to move to dismiss with prejudice (i) plaintiff's first cause of action with respect to the allegations contained in paragraphs 31, 34, 37, 38, 39-47, 48-63, and 64-69; and (ii) plaintiff's second cause of action in its entirety.

Respectfully,

Jonathan M. Sperling