KING & BALLOW
LAW OFFICES
315 UNION STREET
SUITE 1100
NASHVILLE, TENNESSEE 37201

TELEPHONE: 615/259-3456
FACSIMILE: 615/254-7907

www.kingballow.com

*Writer's Direct Dial: (615) 726-5422*
*Writer's Direct Fax: (615) 726-5417*
*e-mail: rbusch@kingballow.com*

July 11, 2013

**_Via E-Mail_**
Hon. Analisa Torres
United States District Judge
Daniel Patrick Moynihan U. S. Courthouse
500 Pearl Street
New York, New York 10007-1312

    Re:    ***Ear Booker Enterprises, Inc. v. Sony Music Entertainment, Inc.***
             **Case No. 1:12-cv-02385-AT**

Dear Judge Torres:

    We represent Plaintiff Ear Booker Enterprises, Inc. ("Ear Booker") in the above referenced action. I write in response to Defendant Sony Music Entertainment's ("Sony") July 3, 2013 pre-motion letter regarding its request for leave to file a motion to dismiss some of Ear Booker's claims.

    As stated in the parties' joint letter, Ear Booker is a corporation formed and controlled by Alfred Matthew Yankovic p/k/a "Weird Al" Yankovic in order to provide the professional and artistic services of Mr. Yankovic. Sony's predecessors in interest entered into a number of recording agreements (the "Agreements") with Ear Booker in order to obtain certain audiovisual performances and sound recordings of musical performances (the "Masters"). In exchange for having the Masters delivered to it, Sony agreed to manufacture, distribute, sell, and license the Masters for sale and distribution, and to account to and pay Ear Booker under a certain royalty structure.

    The Agreements allowed Ear Booker to audit Sony's books and records to ensure Sony was correctly accounting to and paying Ear Booker for its exploitation of the Masters. Ear Booker audited Sony's books and records and found a series of breaches of the Agreements which have resulted in Ear Booker being underpaid by millions of dollars. These breaches include the failure to account to and pay Ear Booker under the correct royalty provisions, the failure to correctly calculate base prices, the deduction of expenses from amounts due even though Sony never actually incurred those expenses, the deduction of expenses from amounts

SAN DIEGO OFFICE:

6540 LUSK BOULEVARD, SUITE 250 · SAN DIEGO, CALIFORNIA 92121 · TELEPHONE: 858/597-6000 · FACSIMILE: 858/597-6008

due even where the Agreements do not give Sony the right to deduct these expenses, the failure to pay Ear Booker for all exploitations of the Masters, and numerous other breaches. Ear Booker sets forth each of these breaches in its Complaint.

Additionally, Ear Booker's Complaint sets forth a breach of the duty of good faith and fair dealing claim. Under the terms of the Agreements, Sony took on a duty to allocate income it received based on exploitations of the Ear Booker Masters. In regard to its allocation of money from some third parties, including YouTube, Sony exercised its discretion in allocating that money arbitrarily, resulting in gross underpayments to Ear Booker.

For the period audited, Sony has failed to account for and pay Ear Booker amounts well in excess of $3,000,000. Upon information and belief, Sony's failure to properly account to and pay Ear Booker continues in the royalty periods following the Audit, which has and will continue to result in additional monetary damages not yet known to Ear Booker.

Sony's July 3, 2013 letter seeks a pre-motion conference so that it might move to dismiss some of Ear Booker's claims. Additionally, Sony has requested Ear Booker provide additional factual support for some of its claims. Although Ear Booker disagrees with Sony's contention that it has not adequately stated its claims, Ear Booker would respectfully submit it should first be granted leave to amend its Complaint in order to address the purported factual deficiencies raised by Sony. Only then should the Court entertain any Motion Sony might still wish to file in light of Ear Booker's amendments.

**Sony's Specific Claims**

Post-Audit Period

First, Sony seeks to dismiss any claims Ear Booker has raised for the post-Audit period. While Ear Booker would assert that Sony has continued to account to and pay Ear Booker incorrectly, in the post-Audit period, Ear Booker's Complaint does not yet raise any claims for the post-Audit period. There is no dispute between the parties in this regard.

Ear Booker is Entitled to a Portion of Sony's Net Reciepts

Second, Sony seeks to dismiss some of the claims Ear Booker has raised in regard to its entitlement to a portion of Sony's net receipts for various types of exploitation of the Masters arguing no provision of the Agreements require it to pay a portion of its net receipts to Ear Booker. The Agreements in fact do contain a number of provisions which require Sony to pay Ear Booker a portion of Sony's net receipts. Ear Booker's claims based on its entitlement to a portion of the Net Receipts received by Sony that are capable of allocation states a claim upon which relief can be granted.

For instance, pursuant to paragraph 9.03(h)(ii) of the 2002 Agreement, Sony is obligated to pay Ear Booker thirty-three percent (33%) of its Net Receipts for income attributed to Mr. Yankovic's Masters "with respect to uses involving non-permanent transmission." Sony entered into a "content license agreement" with YouTube. Contrary to their characterization of this as a

Hon. Analisa Torres
Page 3 of 5

"settlement and damages award," this was a retroactive and prospective license giving permission for YouTube to exploit content owned or controlled by Sony, including the Masters created by Mr. Yankovic. This analysis is true for any so-called "settlement" which is, in fact, a payment for the use of a Master. In exchange for its license with YouTube, upon information and belief, Sony received both cash and an equity stake in YouTube.

Likewise, the same provision, 9.03(h)(ii), of the 2002 Agreement applies to Sony's license with MTV and others who pay Sony in order to exploit content owned or controlled by Sony.

Sony had a specific contractual obligation to properly apportion such licensing income to Ear Booker whether or not Sony's licensee attributed that payment to a Master. The 2002 Agreement defines the term "Net Receipts," in relevant part, as "an amount equal to the gross sums received by [Sony] in the United States for and directly and specifically attributable, identifiable, and allocable to the license of any Master to a third-party Licensee . . . ." The clear reference to gross sums *attributable* means that Ear Booker is entitled to a percentage of Sony's Net Receipts whenever Net Receipts are capable of allocation to a Master created by Mr. Yankovic. *See e.g., Nikken United States v. Robinson-May, Inc.*, 51 Fed. Appx. 874, 883 n.4 (Fed. Cir. 2002); *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 110 F. Supp. 2d 441, 450 (E.D. Va. 2000).Once Sony completed its obligation to attribute that money, it was attributed and subject to the royalty provisions regarding the streaming of Ear Booker's content. Sony breached the Agreements to the extent what it paid Ear Booker does not constitute allocation, and, as discussed below, breached its duty of good faith and fair dealing to the extent there was any allocation, by not properly and fairly, and in good faith, allocating revenue to Mr. Yankovic in proportion to the views of Mr. Yankovic's videos on YouTube.

Sony has Improperly Transferred Income from Its Foreign Affiliates

Ear Booker's Complaint also states a claim based on Sony's improper transfer of income from its foreign affiliates. The 2002 Agreement specifically puts a duty on Sony to treat income from foreign affiliates in the same manner as income from any other third party. Paragraph 19.13 of the 2002 Agreement states, "Licenses to our affiliates shall be on an arms-length basis." The Complaint specifically pleads Sony has breached this portion of the 2002 Agreement in order to deprive artists and producers such as Ear Booker of income that is rightfully due to them.

Sony has numerous foreign affiliates throughout the world which it either owns in whole or in part. Like all major record labels, Sony has intercompany licenses which allow its foreign affiliates to exploit Sony's content. These intercompany licenses allow for Sony's foreign affiliates to keep a significant portion of licensing income above and beyond any amount that is justifiable or related to the services these affiliates provide. Sony has created such an intercompany license in order to improperly and unjustifiably keep receipts rightfully due to Ear Booker in foreign territories and thus avoid paying Ear Booker for those receipts. These license agreements are not at arm's length, as Sony would not enter into the same types of agreements with non-affiliated third party licensees. Under the terms of the 2002 Agreement, Sony took on a specific contractual duty to enter such licensing agreements only on a justifiable basis, which it has failed to do. Although Ear Booker believes its Complaint sufficiently states a claim, in the

interest of addressing Sony's concerns, Ear Booker is willing to move to amend its Complaint to allege additional facts relating to Sony's intercompany licenses with its foreign affiliates.

Sony has Improperly Failed to Pay Ear Booker for "Free Goods"

Sony also seeks permission to dismiss two claims Ear Booker raises in regard to Sony's distribution of "free goods" arguing Ear Booker is not entitled to be paid for free goods. However, Paragraph 9.04 of the 2002 Agreement gives Sony only a limited right to distribute free goods.

Ear Booker's claim regarding free goods, contained in Paragraph 31 of the Complaint, alleges Sony took impermissible free goods deductions by failing to keep its special discount programs to a limited duration, but instead engaged in a continuing series of programs. This resulted in Sony exceeding the permissible free goods deduction called for by the 2002 Agreement. Sony claims Ear Booker is not entitled to be paid on free goods for programs of unlimited duration. In support of this position, Sony cites 9.04 for the proposition that "no royalties will be payable on [free goods]." However, Sony's citation leaves out the remainder of the sentence in question which specifically limits Sony's ability to distribute free goods without compensating Ear Booker. Ear Booker will, however, seek leave to amend its Complaint in order to demonstrate the free goods at issue are not allowable under any provision of the Agreements.

Ear Booker's claim regarding "FGD online/digital transmissions," contained in Paragraph 34 of the Complaint, alleges Sony received compensation for the right to allow digital service providers to sell or license "free goods" and that any portion of that compensation which is attributable to the Ear Booker masters should have been included in Ear Booker's royalty calculation. Sony is well aware of the nature of these claims as the parties have participated in a formal audit process and a long settlement process. However, in response to Sony's request for a more definite statement of the allegations and basis for such a claim, Ear Booker is willing to amend its Complaint in order to more fully state the nature of these claims.

Sony has Breached Its Duty of Good Faith and Fair Dealing

Finally, Sony seeks leave to move to dismiss Ear Booker's claim based on Sony's Breach of the duty of good faith and fair dealing is duplicative of Ear Booker's breach of contract claim. Ear Booker's Complaint states a non-duplicative claim for a breach of Sony's duty of good faith and fair dealing under the 2002 Agreement. As discussed above, Sony had a contractual duty to allocate income which was allocable under the 2002 Agreement. However, the duty of good faith and fair dealing places an additional obligation on Sony – the duty to allocate the income in a reasonable manner. *See Empresas Cablevision, S.A.B. de C.V. v. JPMorgan Chase Bank*, 680 F. Supp. 2d 625, 631-32 (S.D.N.Y. 2010); *AFBT-II, LLC v. Country Vill. on Mooney Pond, Inc.*, 759 N.Y.S.2d 149, 151 (N.Y. Sup. Ct. App. Div. 2003). Because Sony had a contractual duty to allocate income it received from third-party licensing agreements, such as the YouTube agreement, it had a duty to conduct that allocation reasonably and in good faith. Ear Booker's Complaint alleges that Sony failed to properly and reasonably allocate this income based on any kind of supportable formula, but instead did so arbitrarily. Accordingly, Ear Booker has stated a separate claim for breach of Sony's duty of good faith and fair dealing.

      Ear Booker is working to draft a Second Amended Complaint which will address the issues raised in Sony's initial letter to Ear Booker and the new issues raised in Sony's letter to the Court. Ear Booker will file its Motion for Leave to Amend by July 15, 2013 and prays this Court will grant Ear Booker leave to amend. Ear Booker's Motion for Leave will attach a proposed Amended Complaint which will illustrate the sufficiency of Ear Booker's amendment. As such, Ear Booker would respectfully submit any Motion to Dismiss would be premature in light of Ear Booker's willingness to address Sony's concerns in an amendment.

                        Respectfully submitted,

                        Richard S. Busch /PAK/

Cc:    Jonathan Sperling
        Jennifer Saperstein
        Douglas Curran